UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELTON BURKS,

    Petitioner,                                                Civil Action No. 10-cv-12771
                                                                   HON. BERNARD A. FRIEDMAN

v.

DEBRA SCUTT,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Felton Burks ("petitioner") is currently incarcerated at the Cotton Correctional Facility in Jackson, Michigan. He filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(e); one count of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and one count of possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the following reasons, the petition for writ of habeas corpus is denied.

### I. Background

A jury convicted petitioner of the aforementioned offenses following a trial in the Wayne County Circuit Court. The Court will quote the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of sexually assaulting his long-term girlfriend's 18-year-old daughter. The victim testified that before the charged incident occurred, defendant

inappropriately touched her when she was 15 years old. The victim was asleep and awoke to find that defendant had removed her panties and was touching her vaginal area. The victim started crying, and defendant apologized and asked her not to tell anyone. The victim later reported the incident to a school social worker during her senior year of high school. The victim's mother talked to a protective services worker, said that nothing happened, and that she "didn't want [the victim] anymore." The victim did not pursue the matter, and subsequently recanted her claim. The victim avoided defendant, and no other incident occurred until October 2005.

On October 14, 2005, the victim visited from college. On October 15, 2005, at about 2:45 a.m., the victim's mother was at work, and the victim was asleep on a loveseat in the basement. Defendant, who had been drinking alcohol, sat on the loveseat, told the victim that he loved her, and eventually indicated that he was going to have sex with her. A chase and struggle ensued, defendant repeatedly threatened to kill the victim, and the victim cried and pleaded with defendant not to assault her. Eventually, the victim fled up the stairs, but defendant caught her, put her arms behind her back, and pushed her down the stairs. Upon hitting the basement floor, the victim lost consciousness. When she awoke, defendant was on top of her, covering her mouth, repeatedly stating that he loved her, and threatening to rape her, kill her, and dump her body. The victim removed her underwear as defendant directed, and defendant digitally penetrated the victim's vagina and performed oral sex on her. Defendant stopped when he thought he heard someone, and directed the victim to go in an upstairs bedroom. Once upstairs, defendant retrieved a gun from a dresser, and indicated that he was not going to jail. Defendant thereafter put down the gun, performed oral sex on the victim, and put his penis in her vagina. Defendant ejaculated into a towel, pulled up his pants, pointed the gun at the victim, and said, "say goodnight." The victim pleaded with defendant not to kill her, and defendant began indicating that he was going to commit suicide. Defendant directed the victim to return to the basement and dress. Defendant also returned to the basement, drank alcohol, threatened to kill the victim if she moved, and discussed committing suicide before falling asleep.

At about 8:00 a.m., the victim went upstairs after hearing her mother. Shortly thereafter, when the victim and her mother were en route to the mall, the victim disclosed the incidents to her mother. The victim's mother initially supported the victim and attempted to report the incident to the police, but subsequently sided with defendant. The victim's uncle took the victim and her mother to the hospital. The examining physician testified that the victim was "very tearful, anxious, distraught," and had "fresh" bruising and abrasions on her right shoulder and back. Other witnesses observed similar physical injuries on the victim, and that the victim was visibly shaken, nervous, and scared.

The defense denied any wrongdoing, and presented an alibi defense. Crystal Ivanic testified that she and defendant had an affair for a year, and on October 15, 2005, defendant called her at 12:40 a.m., arrived at her home at 1:00 a.m., and left between

4:00 and 5:00 a.m.

*People v. Burks,* No. 269569, at *1-2 (Mich. Ct. App. Jul. 17, 2007).

The Michigan Court of Appeals affirmed the conviction and the state Supreme Court denied leave to appeal. *Id., lv. den.* 480 Mich. 1032 (2008).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. Burks,* No. 05-012184-01 (Wayne County Circuit Court, March 10, 2009). The state appellate courts again denied petitioner leave to appeal. *People v. Burks,* No. 291599 (Mich. Ct. App. Oct. 13, 2009); *lv. den.* 486 Mich. 927 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether or not the trial court abused its discretion by allowing a prosecution witness to give essentially expert opinion evidence, [which] served to improperly bolster the testimony of the complaining witness in this close-credibility contest, and deprived petitioner of his state and federal constitutional right to a fair trial contrary to United States Supreme Court precedent.

II. Whether or not the trial court abused its discretion in admitting other-act evidence, comprised of an unsupported allegation of a prior touching and denied petitioner his state and federal constitutional right to a fair trial contrary to United States Supreme Court precedent.

III. Whether or not petitioner was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through improper questions and argument of [the] prosecutor, and the prosecutor's deliberate failure to obtain potentially exculpatory DNA testing contrary to United States Supreme Court precedent.

IV. Whether or not petitioner's Fifth Amendment right to a fair trial was violated when he was denied the right to an impartial jury contrary to United States Supreme Court precedent.

V. Whether or not petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel throughout the adversary and appellate procedures [in contravention of] United States Supreme Court precedent.

VI. Whether or not petitioner's Fifth Amendment right to a jury trial [was] violated where there were structural defects of jurisdictional significance that are contrary to United States Supreme Court precedent.

VII. Whether or not petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated due to a conflict of interest that is contrary to United States Supreme Court precedent.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs where "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-411.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard

-4-

for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Ultimately, "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-787.

### III. Discussion

#### A. State Evidentiary Rules

Petitioner is not entitled to habeas relief on his first and second claims as they pertain to state evidentiary issues. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in its habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Usually errors in the application of

state law, especially rulings regarding the admissibility of evidence, are not within the province of federal habeas review. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *see Regan v. Hoffner,* 209 F. Supp. 2d 703, 714 (E.D. Mich. 2002).

With respect to the first claim, petitioner contends that the trial court erred in permitting Treva Gordon to offer inadmissible opinion evidence concerning the victim's demeanor without first qualifying her as an expert witness. On direct appeal, the Michigan Court of Appeals rejected petitioner's claim, finding that the trial court properly admitted Ms. Gordon's testimony under M.R.E. 701. The court reasoned that Ms. Gordon's statements constituted lay witness opinion opinion with respect to the victim's demeanor because it "was rationally based on her own interaction with and perception of the victim, and was not overly dependent on technical or specialized knowledge." *Burks,* Slip. Op. at *3. Since the Michigan Court of Appeals has already spoken to this issue of state evidentiary law, the Court "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition," *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)), and petitioner is not entitled to habeas relief on this claim.

As to petitioner's assertion that the trial court abused its discretion when it permitted Ms. Gordon to attest to the victim's reputation for truthfulness, the Michigan Court of Appeals soundly rejected this claim as well. The appellate court found that Ms. Gordon's opinion testimony regarding the victim's truthful character was admissible pursuant to M.R.E. 608(a)(2) after defense counsel sought to undermine the victim's credibility in his opening statement. *Burks,* Slip. Op. at *3. Because this determination involves a state evidentiary matter, the Court will again defer to the opinion of the Michigan Court of Appeals.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting "other acts"

evidence is not either cognizable on habeas review. *Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (habeas power cannot justify reversal of state court conviction based on belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). Quite simply, there is no clearly established Supreme Court precedent holding that a petitioner's due process rights are implicated when propensity evidence is admitted at trial. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

### B. Prosecutorial Misconduct

Petitioner's allegations of prosecutorial misconduct are without merit. Improper commentary on the part of a prosecutor carries constitutional significance only when it "'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In such a case, the offending conduct must be so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-645.

While petitioner contends that the prosecutor committed misconduct by introducing Ms. Gordon's opinion testimony, this argument is tantamount "to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). And "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).

Petitioner further asserts he was denied due process because the prosecutor failed to test the bed sheets and the victim's underwear for the presence of "vaginal secretions" from the victim and/or petitioner's DNA. As a matter of law, a prosecutor "do[es] not have a

constitutional duty to perform any particular test." *Coy v. Renico*, 414 F. Supp. 2d 744, 777 (E.D. Mich. 2006) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988)). This is because the Due Process Clause does not require "the police. . . to use a particular investigatory tool." *Youngblood,* 488 U.S. at 59. Here, the prosecutor's failure to examine physical evidence for the presence of DNA evidence does not amount to a constitutional violation. *Coy v. Renico,* 414 F. Supp. 2d at 777. Moreover, as the Michigan Court of Appeals noted in rejecting petitioner's claim, there was no showing of bad faith on the part of the police in failing to perform the aforesaid tests. *See Burks,* Slip. Op. at * 5; *see also Youngblood*, 488 U.S. at 58.

### C. Procedural Default

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner did not demonstrate sufficient cause and prejudice for failing to raise them claims on direct appeal pursuant to M.C.R. 6.508(D)(3).

When state courts expressly rely on a valid state procedural bar, federal habeas review is unavailable unless petitioner can demonstrate "cause" for the default and actual prejudice resulting from an alleged constitutional violation. A petitioner may also overcome a state procedural bar if he can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991). A court need not reach the element of prejudice in the event a petitioner fails to show cause for his procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Only in extraordinary cases, for instance, where a constitutional error probably resulted in the conviction of one who is actually innocent, may a federal court consider the constitutional claims presented in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986).

Under state law, Michigan Court Rule 6.508(D)(3) provides that a court may not grant

post-conviction relief to a defendant on grounds that should have been raised on direct appeal. Nonetheless, a petitioner may pursue habeas relief upon a showing of good cause for the previous failure to raise such grounds and actual prejudice resulting therefrom. Where, as here, the last state court judgment contains no reasoning, but merely affirms the conviction in a summary order, the Court will review the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment, or rejecting the same claim, rested upon identical grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this matter, the judgment of the Wayne County Circuit court is the last reasoned state court judgment. Therein, the Wayne County Circuit Court judge rejected petitioner's post-conviction claims on the ground that petitioner had "failed to make any meritorious arguments which establish that, but for the alleged errors, he would have had a reasonably likely chance of acquittal." *People v. Burks,* No. 05-012184-01, *9 (Wayne County Circuit Court, Oct. 13, 2009) *citing* M.C.R. 6.508(D)(3)(b)(i). Thus, the state trial court denied petitioner's motion for post-conviction relief based on M.C.R. 6.508(D)(3) and petitioner's post-conviction claims are procedurally defaulted. *See Ivory v. Jackson,* 509 F. 3d 284, 292-293 (6th Cir. 2007); *Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005). The fact that the trial court may have discussed the merits of petitioner's claims while invoking the provisions of M.C.R. 6.508(D)(3) does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).

To skirt this procedural bar, petitioner contends that his allegations of jury impartiality and attorney conflict of interest are not subject to default because they are jurisdictional defects pursuant to M.C.R. 6.508(D)(3). While petitioner correctly maintains that the "good cause" and "actual prejudice" prerequisites of M.C.R. 6.508(D)(3) do not come into play where a defendant alleges jurisdictional defects in a prior proceeding that resulted in a judgment of conviction, *see*

*People v. Carpentier,* 446 Mich. 19, 27 (1994), the alleged errors do not rise to the level of a jurisdictional defect. On the contrary, courts have applied the cause and prejudice requirements of M.C.R. 6.508(D)(3) to claims of jury impartiality and attorney conflict of interest. *See Torrez v. McKee,* 601 F. Supp. 2d 920, 950, n. 2 (W.D. Mich. 2009) (jury impartiality); *Hailes v. Lavigne,* No. 03–74144; 2009 WL 1508422, *1-3 (E.D. Mich. May 28, 2009) (same); *see also McFarland v. Yukins,* 356 F. 3d 688, 697 (6th Cir. 2004) (attorney conflict of interest); *Smith v. Perry,* No. 11-11145, 2013 WL 173818, *2, 10-11 (E.D. Mich. January 16, 2013) (same).

Petitioner further alleges that these claims are not subject to procedural default because he received the ineffective assistance of appellate counsel. This contention is meritless. A criminal defendant does not possess a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the United States Supreme Court explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the. . . goal of vigorous and effective advocacy. . . Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-752).

Appellate counsel filed a twenty-eight page brief on appeal solely raising the first three claims that appeared in petitioner's application. Petitioner has not shown that appellate counsel's strategy in presenting these claims rather than others amounted to deficient representation. None

of the claims raised by petitioner in his post-conviction motion were obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigny*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Furthermore, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner because his post-conviction claims are unavailing. *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (stating that "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"). As petitioner has not demonstrated any cause for the procedural default of his fourth through seventh claims, it is unnecessary to decide whether petitioner suffered actual prejudice on account of their omission from his direct appeal. *Rowls v. Jamrog,* 193 F. Supp. 2d 1016, 1026 (E.D. Mich. 2002).

### D. Certificate of Appealability

The Court declines to issue petitioner a certificate of appealability. A petitioner must make a substantial showing of the denial of a constitutional right to obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). Similarly, when a district court denies a habeas petition on procedural grounds, a certificate of appealability should issue and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

In light of the foregoing standards, the Court will deny petitioner a certificate of

appealability because petitioner has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis* as such an appeal would be frivolous. *Id.*

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that petitioner is denied leave to appeal *in forma pauperis.*

                              S/ Bernard A. Friedman_____
                              BERNARD A. FRIEDMAN
DATED: June 12, 2013          SENIOR UNITED STATES DISTRICT JUDGE